In the Matter of the Claim of JAMES STRUBLE, Respondent, against VACUUM OIL COMPANY, Appellant. STATE INDUSTRIAL BOARD, Respondent.

Third Department, July 2, 1926.

**Workmen's compensation — award — claimant's right eyeball was cut by glass and scar remains on cornea of eye — finding of State Industrial Board of loss of sixty per cent of use supported by evidence.**

The finding by the State Industrial Board that the claimant, whose right eye was cut by glass, leaving a scar on the cornea, was deprived of sixty per cent of the use of the eye as the result of the accident is supported by the evidence.

APPEAL by the Vacuum Oil Company from an award of the State Industrial Board made on the 14th day of April, 1926.

*Bowman & Van Schaick* [*George S. Van Schaick* of counsel], for the appellant.

*Albert Ottinger, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent State Industrial Board.

PER CURIAM. For the third time the State Industrial Board has awarded claimant sixty per cent loss of use of his right eye and this is the third appeal. On the first appeal (210 App. Div. 344) the only testimony given related wholly to the subject of acuity of central vision. No other element of vision such as field vision or binocular vision was considered. The only testimony in the case relied upon by the State Industrial Board in fixing the percentage of loss of use was to the effect that the Snellen symbols constituted fractions of the unit of sight and we held that such an interpretation was a dogmatic assertion which led to absurdities which contradicted and disproved the theory.

On the second appeal (214 App. Div. 844) we again reversed and remitted the matter " on the ground that the Board, in making the award, considered only acuity of vision, ignoring field vision and other attributes of sight; and for reasons heretofore expressed by this court in 210 Appellate Division, 344."

Since that time additional hearings have been had and further medical testimony has been taken and the State Industrial Board

has again found a loss of sixty per cent of vision of the right eye, making the following findings:

" The injury sustained by James Struble at the time and place hereinbefore specified, caused claimant to lose 60% of the vision of the right eye in such accidental injury arising out of and in the course of his employment, taking into consideration the acuity of vision, field vision, binocular vision and all other attributes of vision.

" The accident in question reduced the vision of the claimant's right eye 80 per centum or more without correction of glasses and with correction of glasses 60 per centum, and even with the correcting glasses the claimant was unable to read the ordinary print of newspapers or books."

The injury to claimant's right eye occurred while operating a machine. Something struck the lens of the goggles which he was wearing and as a result a lens was shattered and the broken part of the glass lacerated his right eyeball, which resulted in a scar on the cornea of his right eye. On both of the former appeals in this case it has been our opinion that all of the effects of this scar on the cornea had not been given due weight, and it now clearly appears from the medical testimony that this scar has had a most important bearing upon a determination of the full loss of claimant's useful vision. The doctors are now agreed that even with correcting glasses bringing his vision from practical blindness to 20/50, the scar on the cornea which almost covers the pupilary area, causes such a diffusion or cutting down of the light entering the eye together with an irregularity of the cornea that claimant is unable to read ordinary type. One doctor says he could not put any glasses on that injured eye that would make claimant read; that if a man had an ordinary 20/50 eye and had no such injury of the cornea and myopic he could read practically in a normal way, whereas the claimant cannot do so because of this scar. He says: " I never examined an eye like that in my life." And again he says: "Acuity of vision is bad enough with 20/50 without robbing him of depth of perception vision or field vision." Dr. Mehl said that he took into consideration field vision, binocular vision and all the various factors of vision and reached the conclusion that the claimant had sixty per cent loss of vision without taking into consideration this diminished reading vision for the reason that he believed his loss of direct central vision should represent the claimant's loss. Dr. Conboy went further in his testimony. He says that he found a substantial defect in field vision and binocular vision. His testimony is as follows: " His binocular vision for close work is very much interfered with because of the corneal opacity due to his

injury. The loss of binocular vision is not so great when the eye is focused for distance because of the increased size of the pupillary diameter, but even then he is handicapped greatly by a distorted irregular astigmatism, the rays of light being unable to penetrate in the regular way through the corneal opacity and for the same reason his depth perception is very much reduced when the examination for this defect is made, when his eye is focused on an object at close range and small. When Mr. Struble is looking at a distance or when he is looking at close objects because of the diffusion of light rays his vision is distorted and very bothersome to him, and he is thoroughly conscious of this because he resorts to closing the injured eye and uses the left eye alone when he wishes to see anything with any accuracy. In other words, with both eyes open he has a diffusion of vision, made so by his injury which has resulted in the corneal opacity and irregular astigmatism. He gets greater vision with greater clearance for close work with the right or injured eye closed, depending solely on the uninjured eye for the reasons I have just enumerated." Dr. Acheson says: " My opinion taking into consideration central acuity vision, fields of vision and binocular single vision is that this claimant has lost 60% of the use of the right eye."

In all of the circumstances now appearing in this particular case and considering the foregoing medical testimony we can no longer say that the question involved here is not one of fact for the determination of the State Industrial Board. Claimant does not seem to have an ordinary 20/50 eye. The Board has made a distinct finding as to the inability of the claimant to read ordinary print even with correcting glasses, and has also found that it took into consideration all of the attributes of vision. We can no longer say as a matter of law that the Board was not justified in concluding that this claimant lost sixty per cent of his useful vision in his right eye. Practical considerations as well as medical opinion would now seem to sustain the finding, as judged by his dimness of sight and inability to read caused by the scar. It is perhaps unfortunate that the learned attorney for this appellant who has ably conducted this important test case should be unable to obtain herein a final settlement of the precise issue in which he is interested, but we think the record upon this appeal is such that we must affirm the award. We do not, however, modify the views expressed by this court upon the foregoing appeals herein. It may be that in other eye cases involving the interpretation of the Snellen test the State Industrial Board will hereafter settle the controversy and afford a possibly satisfactory interpretation by adopting a ruling, in ordinary cases, in conformity with the concensus of opinion of the American

Medical Association as reflected in the final report of its committee on compensation for eye injuries which was approved and adopted by that association at Atlantic City in May, 1925, and which report has been received in evidence in the record herein.

The award should be affirmed, with costs to the State Industrial Board.

Award unanimously affirmed, with costs to the State Industrial Board.